1

2

3

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10   DARRYL LA'VON MITCHELL,

11                  Petitioner,                   No. CIV S-09-0785 EFB P

12          vs.

13   R. E. BARNES,

14                  Respondent.              <u>ORDER</u>

15   _____/

16          Petitioner is a state prisoner proceeding *in propria persona* with an application for a writ

17   of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges a 2006 judgment of

18   conviction entered against him in the Solano County Superior Court on two counts of second

19   degree robbery, with enhancements for serving two prior prison terms.  He seeks relief on the

20   grounds that: (1) the evidence introduced at his trial was insufficient to support his conviction on

21   the robbery counts; (2) the trial court violated his right to due process in failing to sever the

22   robbery counts; and (3) his trial counsel rendered ineffective assistance by failing to move for

23   severance.  Upon careful consideration of the record and the applicable law, the court finds that

24   petitioner's application for habeas corpus relief must be denied.

25   ////

26   ////

1

## I.      Background[1]

These consolidated appeals concern two robberies that occurred in the city of Vallejo, on the night of April 29, 2006. Carlos Trinidad was accosted by a woman, who was soon joined by several other people. Trinidad was knocked unconscious, and had his wallet and cell phone taken. A short while later, a few blocks away, Peter Bedolla was accosted by a woman, who was then joined by several others. Bedolla was hit in the head and robbed. Neither victim was able to identify his attackers, but a few hours after the attack on Trinidad, Darryl Lavon Mitchell (Mitchell) tried to sell Trinidad's cell phone to the victim's stepdaughter. The next day an accomplice gave a statement to the police, and ultimately testified against Mitchell and his codefendant Arthur Lee Walton (Walton) at their joint trial.

Mitchell was charged and convicted of the robbery of Trinidad and Bedolla, but the jury found not true an enhancement allegation pursuant to Penal Code section 12022.7, subdivision (b)[2] with respect to the Bedolla robbery. The jury also found Walton guilty of the Bedolla robbery,[3] and found true the allegation that he personally inflicted great bodily injury.

On appeal, Mitchell contends that his convictions must be reversed because they are based upon uncorroborated accomplice testimony that also was so contradictory and unreliable that it was insufficient to support the jury findings of guilt. He further contends that he was prejudiced by the trial court's failure, sua sponte, to sever the two counts of robbery, and that his trial counsel rendered ineffective assistance by failing to move for severance.

Walton contends the court abused its discretion by denying his motion to sever his trial from Mitchell's, and committed prejudicial error by failing to give a limiting instruction with respect to the evidence that Mitchell possessed the cell phone taken in the Trinidad robbery, and failing to modify another standard instruction on the inferences that may be drawn from possession of stolen property to specify that it applied only to Mitchell.

---

[1] In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the First Appellate District provided the following factual summary.

[2] Statutory references are to the Penal Code unless otherwise stated.

[3] Walton was not charged with the Trinidad robbery.

We shall affirm the judgment as to both defendants.

**Facts[4]**

**Trinidad Robbery**

Carlos Trinidad testified that on April 29, 2006, at approximately 8:30 or 9:00 p.m., he was walking home from work in Vallejo.  He was carrying his cell phone, $120 in cash, and a check for $950.  In the vicinity of Alameda and Florida Streets, a skinny African American woman approached him, but Trinidad kept walking.  Trinidad began to run when the woman kept following and yelling.  She reached out and grabbed him by his shirt.  Then several African American men converged upon him, threw him down and hit him in the head.[5]  They ripped his pants near his pocket, and took his wallet, his paycheck and his cell phone.  He lost consciousness as a result of the attack, but somehow managed to walk home, and was taken to the hospital.  Trinidad told the police he could not identify the people who robbed and beat him.

Trinidad's stepdaughter, Berenice Gaaolegos, testified that she went to the hospital to see her stepfather at about 10:00 p.m.  She called Trinidad's cell phone and a man with a Puerto Rican accent answered.  She asked him how he got the cell phone, and he said he found it in the street. She pretended that the phone belonged to her, and agreed to pay him a $20 reward if he returned the phone.  She then contacted the police, and met with Detective Pucci.  While she was at the police station a different person, named Darryl, called her several times, said he wanted $10 for the phone, and wanted to meet in five minutes.  Gaaolegos agreed to meet Darryl, and the police followed her to the agreed meeting place.  When she arrived at the meeting place in front of a tire store, at approximately 1:30 a.m., Mitchell came over to her with the cell phone.  He was arrested by the police after Gaaolegos confirmed that the cell phone belonged to her stepfather.[6]

////

////

---

[4]  Consistent with the standard of review, we summarize the facts in the light most favorable to the judgment.

[5]  Trinidad was not sure how many people attacked him, but estimated it was four men.

[6]  Although Trinidad accompanied Gaaolegos and the police to the meeting with Mitchell, he was still not feeling well and stayed in the car.  He testified that he did not know Mitchell and never gave him permission to have his cell phone.

**Bedolla Robbery**

At about 11:13 that same evening, three Vallejo police officers were dispatched in response to a call about a "man down." They found Peter Bedolla lying on the street in the 1300 block of Sutter Street, near an alley. Bedolla had suffered head injuries, was unable to speak, and was transported to the hospital. On Kentucky Street, east of the intersection of Sutter and Kentucky, the police found Bedolla's wallet and some of its contents. His cell phone was never recovered.

The police canvassed the area, but were unable to find any witnesses. Bedolla's ex-wife, Cheryl Bedolla, with whom he still resided, testified that she last saw Bedolla at about 9:45 or 10:00 o'clock that evening. The police came to her house at about 3:30 a.m. and told her that Bedolla had been taken to the hospital. They gave her his keys, and she identified the wallet as belonging to Bedolla. As of the time of trial, Bedolla was still hospitalized. He suffered brain damage and was unable to communicate.

The parties stipulated that Bedolla suffered great bodily injury within the meaning of section 12022.7, subdivision (b).

**Accomplice Testimony of Tiffany Gipson**

The day after the robberies, the Vallejo police arrested Tiffany Gipson on unrelated drug charges. Gipson gave a statement to Detective Pucci while she was under the influence of drugs.[7] Gipson testified that she made the statement because the police told her they could make the "dope" disappear, and she wanted to go home. She gave the police the least amount of information she thought was necessary to get released.

Based upon her statement, Gipson was charged with both robberies as a codefendant of Walton and Mitchell. Pursuant to a negotiated plea, she pleaded guilty to the Trinidad robbery. The prosecutor dismissed the second robbery count, and she was promised probation in exchange for her truthful testimony.

Gipson testified that she had known Walton, whose nickname was "Moosie," and Mitchell for a few years. Gipson used crack cocaine with Walton, Mitchell, Belinda Gaitlin, also known as "Joy," and Marcy Thompson, whom Gipson called "Diamond." The five of them were using crack cocaine together on the evening of April 29, 2006. At around 9:00 or 10:00 p.m., Gipson was driving with Diamond in a gray BMW when they saw an Hispanic man walking down Lozier Alley off of Alameda Street. Diamond got out of the car, approached the man, and hit him in the face.

---

[7] The two and one-half hour interview of Gipson was videotaped and played for the jury.

4

Mitchell and Walton came out of a nearby apartment, and assisted Diamond while Gipson remained in the car as a lookout. Joy was also in the alley. Mitchell and Walton patted the man's pockets, but did not hit him. Mitchell and Walton ran back into the apartment building, and Diamond came back to the car. Gipson believed that Diamond got all the cash, but she gave Gipson drugs. Gipson testified that all they took was cash. She did not see a cell phone taken in this robbery.

Gipson and Diamond continued to drive around and use drugs, and a short while later they picked up Mitchell, and then Walton. Joy was also in the car, sitting between Mitchell and Walton. While they smoked crack they developed a plan to have Joy entice a man to an apartment off Sutter Street so they could rob him. Sometime between 10:00 p.m. and midnight, while Diamond, Gipson, Mitchell and Walton were driving around, they saw Joy with an Hispanic man at Carolina and Sutter Streets.[8] Joy did not succeed in getting the man to the apartment, so they drove past her, and Diamond, Walton and Mitchell got out of the car. Gipson remained in the car as a lookout. Diamond took the first swing at the man. After the man fell to the ground, Walton stomped on the man's head numerous times. Mitchell took the man's cell phone, but Gipson did not see him touch the victim. The attack lasted less than 10 minutes. The man was not moving when Diamond, Joy, Mitchell, and Walton returned to the car. Joy took the money out of the man's wallet, and Walton threw the wallet out of the car near a baseball park off of Sutter Street. Joy kept $40, and Diamond, Walton, and Mitchell split the rest. Gipson was given more drugs for being the lookout.

Gipson testified that in her police interview she did not initially mention Walton as one of the robbery participants because he was her friend. Instead, she referred to a "young dude" who did not exist. She did not mention Walton until Detective Pucci brought him up. She also acknowledged that being under the influence of drugs made it difficult for her to remember things clearly.

**Tamika Darnes**

Tamika Darnes had been dating Walton for several months before April 29, 2006. On April 17, 2006, she was stabbed by a person she described only as a "Mexican." She and Walton had a rocky relationship, and around the time the robberies occurred, Darnes was facing a misdemeanor battery charge involving Walton.

---

[8] Bedolla was found at Sutter and Kentucky Streets. In her videotaped interview and in the testimony at trial, Gipson maintained that the second robbery was at Sutter and Carolina Streets, which was about three blocks away from the intersection where the police found Bedolla.

Darnes first met Detective Pucci while he was investigating the stabbing incident.  Then, on May 2, when Detective Pucci asked if she knew anything about why the police were looking for Walton, she told him she had only heard on the street that he was hiding from the police.  On May 9, Darnes told Detective Pucci that, in a telephone call, Walton had told her he had been in a car on Sutter Street, and had jumped out of the car when he saw Joy in an altercation with a Mexican.  Walton said he hit the man and the man passed out.  When Darnes brought the incident up again later, Walton denied it.  Darnes believed Diamond was also involved, and she suspected Diamond had a relationship with Walton beyond the brother-sister type of relationship he claimed to have with Diamond.

At Detective Pucci's request, Darnes made a recorded call to Walton.  During the call, Darnes asked if Walton remembered telling her about how he "hit that Mexican on the street," and whether he knew the man was in the hospital.  Walton denied that he told her he hit anybody.  He said he knew about it, but that he was not there, and other people did it.  The rest of the call concerned an argument over Darnes's accusation that Walton was spending time with Diamond, and Walton's denial.  Eventually, he hung up on her.

Darnes testified that the conversation she had with Walton that she described in her videotaped statement, in which he said he hit the Mexican, had occurred before she was stabbed.  She told Detective Pucci about it because she believed she had been stabbed in retaliation for Walton's attack on another Mexican.  She did not want to testify against Walton at trial, but was under subpoena.[9]

**Other Police Investigation**

Peter Bedolla's cell phone was never recovered.  Detective Pucci acknowledged that he used harsh interrogation techniques with Gipson in the videotaped interview because Bedolla's condition was grave, and, at the time of the interview, they had no information about who was responsible.  A search of Walton's last known address revealed nothing of evidentiary value.

Detective Pucci also went to the known crack house at 1308 Sutter and attempted to interview Joy, but she would not talk.  Detective Pucci also spoke to an unidentified man of Spanish descent who was present.

---

[9]  Darnes and Walton were engaged, but their plans to be married before the sentencing in this case were administratively delayed.

1  Answer, Ex. F (hereinafter Opinion), at 1-7.

2       After his conviction was affirmed by the California Court of Appeal, petitioner filed a

3  petition for review in the California Supreme Court, in which he raised the same claims that are

4  contained in the petition before this court.  Answer, Ex. G.  That petition was summarily denied.

5  Answer, Ex. H.

6  **II.**    **Analysis**

7       **A.  Standards for a Writ of Habeas Corpus**

8       An application for a writ of habeas corpus by a person in custody under a judgment of a

9  state court can be granted only for violations of the Constitution or laws of the United States.  28

10  U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or

11  application of state law.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*,

12  202 F.3d 1146, 1149 (9th Cir. 2000).

13       Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas

14  corpus relief:

15          An application for a writ of habeas corpus on behalf of a
      person in custody pursuant to the judgment of a State court shall

16        not be granted with respect to any claim that was adjudicated on
      the merits in State court proceedings unless the adjudication of the

17        claim -

18          (1) resulted in a decision that was contrary to, or involved
      an unreasonable application of, clearly established Federal law, as

19        determined by the Supreme Court of the United States; or

20          (2) resulted in a decision that was based on an unreasonable
      determination of the facts in light of the evidence presented in the

21        State court proceeding.

22       Under section 2254(d)(1), a state court decision is "contrary to" clearly established

23  United States Supreme Court precedents if it applies a rule that contradicts the governing law set

24  forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable

25  from a decision of the  Supreme Court and nevertheless arrives at different result.  *Early v.*

26  *Packer*, 537 U.S. 3, 7 (2002) (*citing Williams v. Taylor*, 529 U.S. 362, 405-406 (2000)).

1        Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas

2  court may grant the writ if the state court identifies the correct governing legal principle from the

3  Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's

4  case. *Williams*, 529 U.S. at 413. A federal habeas court "may not issue the writ simply because

5  that court concludes in its independent judgment that the relevant state-court decision applied

6  clearly established federal law erroneously or incorrectly. Rather, that application must also be

7  unreasonable." *Id.* at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (internal

8  citations omitted) (it is "not enough that a federal habeas court, in its independent review of the

9  legal question, is left with a 'firm conviction' that the state court was 'erroneous.'"). "A state

10  court's determination that a claim lacks merit precludes federal habeas relief so long as

11  'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*

12  *v. Richter*, 131 S. Ct. 770, 786 (2011).

13        If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing

14  court must conduct a de novo review of a habeas petitioner's claims. *Delgadillo v. Woodford*,

15  527 F.3d 919, 925 (9th Cir. 2008). *See also Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008)

16  (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of §

17  2254(d)(1) error and that, if there is such error, we must decide the habeas petition by

18  considering de novo the constitutional issues raised.").

19        The court looks to the last reasoned state court decision as the basis for the state court

20  judgment. *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state

21  court decision adopts or substantially incorporates the reasoning from a previous state court

22  decision, this court may consider both decisions to ascertain the reasoning of the last decision.

23  *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim

24  has been presented to a state court and the state court has denied relief, it may be presumed that

25  the state court adjudicated the claim on the merits in the absence of any indication or state-law

26  procedural principles to the contrary." *Harrington*, 131 S. Ct. at 784-85 (2011). That

presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." *Id.* at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)).  However, when it is clear that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. *Nulph v. Cook*, 333 F.3d 1052, 1056 (9th Cir. 2003).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).  "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." *Id.*  Where no reasoned decision is available, the habeas petitioner has the burden of "showing there was no reasonable basis for the state court to deny relief." *Harrington*, 131 S. Ct. at 784.

**B.  Petitioner's Claims**

**1.  <u>Insufficient Evidence</u>**

Petitioner's first ground for relief is stated as follows:

> Where, exclusive of the accomplice testimony, the only evidence presented in the prosecution's case-in-chief relating directly to petitioner (Mr. Mitchell) guilt of the robberies consisted of his possession of the recently stolen cell phone from the first robbery, did the court err in holding that this possession alone was legally sufficient to corroborate the accomplice and identify petitioner (Mr. Mitchell) as a perpetrator in both robberies, without the need for independent corroboration regarding the possession of the stolen phone?

Pet. at 5.

In his second ground for relief, petitioner asks:

> Did the court in [sic] err in finding the evidence sufficient to link petitioner (Mr. Mitchell) to the commission of the *second* robbery (despite the lack of physical evidence, witness identification or

1         acts or admissions by Mr. Mitchell) based on Mr. Mitchell's
possession of the stolen phone from the *first* robbery and the
2         inference of a common scheme or plan from shared similarities of
the two robberies?
3

4    *Id.* at 7.  The court will construe these two grounds for relief as a claim that the evidence

5    introduced at petitioner's trial was insufficient to support his conviction on the robbery counts

6    because the testimony of his accomplice was insufficiently corroborated and the remaining

7    evidence against him did not support the jury verdicts.

8        Pursuant to California law, a criminal conviction must be based on more than

9    uncorroborated accomplice testimony.  Specifically, Cal. Penal Code § 1111 provides, in

10   relevant part:

11         A conviction can not be had upon the testimony of an accomplice
unless it be corroborated by such other evidence as shall tend to
12         connect the defendant with the commission of the offense; and the
corroboration is not sufficient if it merely shows the commission
13         of the offense or the circumstances thereof.

14   The California Court of Appeal concluded that the accomplice testimony in this case, which was

15   provided by Gipson, was sufficiently corroborated under state law and that the evidence

16   introduced at petitioner's trial was sufficient to support his conviction on both robbery counts.

17   The court reasoned as follows:

18        **1. Corroboration of Accomplice Testimony and Sufficiency of**
        **the Evidence**
19

20        At the conclusion of the prosecution's case, Mitchell's defense
        counsel moved for a judgment of acquittal.  (*See People v. Belton*
21         (1979) 23 Cal.3d 516, 521-523.)  He argued that there was
        insufficient independent corroboration of Gipson's accomplice
22         testimony as to either the Trinidad or the Bedolla robbery.  The
        court denied the motion.  It acknowledged that defense counsel
23         could make a strong argument that Gipson was not a credible
        witness.  Nevertheless, the court found Mitchell's possession of
24         the cell phone, and the circumstances of the Trinidad robbery and
        its occurrence close in time and place to the Bedolla robbery, was
25         sufficient corroboration to submit the issue to the jury.

26        Defendant contends the court erred in denying his motion for
        acquittal and that the judgment should be reversed because his

conviction rests on the testimony of an accomplice whose testimony was not corroborated by sufficient and competent evidence, in contravention of section 1111, and because Gipson's testimony was so riddled with discrepancies and irreconcilable conflicts that it did not constitute substantial evidence.

The trial court applies the same standard when ruling on a motion for acquittal that this court follows when we review the sufficiency of the evidence to support a judgment.  (*Veitch v. Superior Court* (1979) 89 Cal.App.3d 722, 727.)  When reviewing the sufficiency of the evidence to support the judgment this court must determine whether ""after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."'  [Citation.]  Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.  [Citation.]  We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence."  (*People v. Maury* (2003) 30 Cal.4th 342, 403.)

"'To corroborate the testimony of an accomplice, the prosecution must produce independent evidence which, without aid or assistance from the testimony of the accomplice, tends to connect the defendant with the crime charged.  [Citation omitted.]  "The evidence need not corroborate the accomplice as to every fact to which he testifies but is sufficient if it does not require interpretation and direction from the testimony of the accomplice yet tends to connect the defendant with the commission of the offense in such a way as reasonably may satisfy a jury that the accomplice is telling the truth; it must tend to implicate the defendant and therefore must relate to some act or fact which is an element of the crime but it is not necessary that the corroborative evidence be sufficient in itself to establish every element of the offense charged."  [Citations omitted.] . . . "[T]he corroborative evidence may be slight and entitled to little consideration when standing alone."'  [Citations omitted.]'"  (*People v. Bunyard* (1988) 45 Cal.3d 1189, 1206 (*Bunyard*.)  "The trier of fact's determination on the issue of corroboration is binding on the reviewing court unless the corroborating evidence should not have been admitted or does not reasonably tend to connect the defendant with the commission of the crime."  (*People v. McDermott* (2002) 28 Cal.4th 946, 986.)[10]

---

[10]  Mitchell incorrectly argues that the trial court applied the wrong standard in denying his motion for acquittal because it stated that it must assess the sufficiency of the evidence assuming the jury finds Gipson's testimony credible.  That is the correct standard, and is the same that this court applies on appeal.  With respect to the evidence of corroboration, the trial

**a. Trinidad Robbery**

The primary evidence corroborating Gipson's account of the Trinidad robbery, and specifically Mitchell's involvement in it, consisted of the evidence that Mitchell was in possession of Trinidad's cell phone just a few hours after the robbery and was anxious to sell it to Gaaologos on the street at 1:30 a.m. for $10.

"It is established that '[t]he possession of recently stolen property is sufficient to support corroboration for an accomplice's testimony.'" (*People v. Narvaez* (2002) 104 Cal.App.4th 1295, 1304 (*Narvaez*).)  Mitchell nonetheless contends that, in this case, the evidence of his possession of Trinidad's cell phone did not constitute legally sufficient corroboration of Gipson's accomplice testimony, for two reasons:

First, Mitchell contends that evidence he possessed Trinidad's cell phone did not corroborate Gipson's testimony because she testified that no cell phone was taken from Trinidad.  He reasons that rather than corroborate Gipson, the evidence that he possessed Trinidad's cell phone actually contradicted it.  The conflict, however, was not irreconcilable, and in any event was for the jury to resolve. Trinidad testified that his assailants did remove his cell phone from his pocket. Although Gipson maintained that no cell phone was taken from Trinidad, she testified that, after Diamond hit Trinidad, Mitchell and Walton came out of a nearby apartment, "patt[ed] [Trinidad's] pockets," and then ran back into the apartment.  The jury could have resolved the conflict between Trinidad's account and Gipson's assertion that no cell phone was taken by drawing the reasonable inference that Gipson simply did not see what Mitchell took from Trinidad's pockets, because she remained in the car, whereas Mitchell returned to the apartment.  Assuming, as we must when reviewing the sufficiency of the evidence to support of the judgment, that the jury did draw such an inference, then Trinidad's testimony that his cell phone was taken, together with Mitchell's possession of Trinidad's cell phone and the circumstances of his attempt to sell it, was sufficient to corroborate Gipson's testimony that Mitchell participated in the Trinidad robbery.  (*See People v. Espinoza* (1979) 99 Cal.App.3d 44, 49 [victim's testimony corroborated accomplice testimony that defendant used a gun despite discrepancy between victim and accomplice regarding the caliber of the gun].)

Second, Mitchell argues that evidence of his possession of the cell phone was insufficient to corroborate Gipson's accomplice testimony because possession of recently stolen property itself

---

court must also allow the jury to resolve conflict and credibility issues as long as the proffered evidence is admissible and reasonably tends to connect the defendant with the commission of the crime. (*People v. McDermott, supra*, 28 Cal.4th at p. 986.)

requires some corroboration, however slight, to support an inference that the person in possession is guilty of a theft-related offense.  In *Narvaez, supra*, 104 Cal.App.4th 1295, the court rejected the identical contention.  It explained that "the reason for the rule requiring corroboration before evidence of possession of stolen property can raise an inference that the possessor is guilty of theft, is markedly different from the reason corroboration is required for accomplice testimony.  In the former instance, corroboration is required because evidence of possession of stolen property raises a strong inference of guilt" (*id.* at p. 1304), and the jury is cautioned that because this is circumstantial evidence, it should have some additional basis for drawing an inference of guilt.  "Accomplice testimony, on the other hand, must be corroborated because it is inherently suspect," as coming from a "tainted source" in light of the accomplice's interest in shifting blame to others or gaining immunity.  (*Ibid.*)  The court concluded that, for the purpose of corroborating accomplice testimony, evidence of possession of recently stolen property is sufficient because it "is direct physical evidence that does not rely on witness credibility.  Thus, there is no taint of improper motive." (*Ibid.*)

Mitchell attempts to distinguish *Narvaez, supra*, 104 Cal.App.4th 1295, by repeating his argument that here evidence of possession of Trinidad's cell phone did not tend to establish Gipson's credibility because she testified no cell phone was taken in that robbery.  Yet, as we have explained, the jury could have concluded she was mistaken on that one point based upon Trinidad's testimony that his cell phone was in fact taken, without discrediting the remainder of her account of the Trinidad robbery.

Mitchell also argues that the conclusion in *Narvaez, supra*, 104 Cal.App.4th 1295, that evidence the defendant possessed stolen property is sufficient corroboration, has been "refuted by a higher authority," citing *People v. Najera* (2008) 43 Cal.4th 1132 (*Najera*).  Yet, the court in *Najera* did not even address the question whether evidence the defendant possessed stolen property was sufficient to corroborate accomplice testimony that the defendant committed the theft-related offense.  Instead, the court addressed the very different question whether a trial court has a sua sponte duty to instruct the jury that possession of recently stolen property is insufficient by itself to convict the defendant of a charged theft-related offense.  The Supreme Court rejected the defendant's attempt to draw an analogy to cases imposing a sua sponte duty to instruct on the need for corroboration of accomplice testimony.  The court explained, "[A]ccomplice testimony requires corroboration not because such evidence is factually insufficient to permit a reasonable trier of fact to find the accused guilty . . . but because '[t]he Legislature has determined that because of the reliability questions posed by certain categories of evidence, evidence in those categories by itself is insufficient as a matter of law to support a conviction.'" (*Id.* at pp. 1136-1137.)  The court

13

has a sua sponte duty to give instruction on corroboration of accomplice testimony because it informs the jury of an exception, created by the Legislature for extrinsic policy reasons, to the more general rule that testimony of a single witness, whose testimony is believed, is sufficient to prove any fact.  Without such instruction, a jury might convict "without finding the corroboration that Penal Code section 1111 requires."  (*Id.* at p. 1137.)

The *Najera* court reasoned that by contrast, "[a]lthough possession of recently stolen property, if uncorroborated, is likewise insufficient to establish the accused's guilt of a theft-related offense, the insufficiency does not derive from an extrinsic legal rule, but, rather, is apparent from the general rule governing the jury's consideration of circumstantial evidence."  (*Najera, supra*, 43 Cal.4th at p. 1138.)  In other words, although the fact of possession of recently stolen property is circumstantial evidence that the defendant committed the theft, it alone does not foreclose other innocent explanations for the circumstance of possession, such as the possibility that the perpetrator of the theft ""artfully placed the article in the possession or on the premises of an innocent person, the better to conceal his own guilt; or it may have been thrown away by the felon in his flight and found by the possessor, or have been taken from him in order to restore it to the true owner.""  (*Ibid.*)  The court concluded the trial court did not have a sua sponte duty to give an instruction that circumstance of possession of stolen property alone does not establish guilt because the instruction was merely a specific version of more general instructions on weighing circumstantial evidence.  (*Id.* at pp. 1138-1141.)  Nothing in this analysis undermines the conclusion in *Narvaez, supra*, 104 Cal.App.4th 1295, that evidence of possession of recently stolen property is sufficient corroboration of accomplice testimony that the defendant committed a theft-related offense because it is direct physical evidence, independent of the tainted accomplice source tending to link the defendant to the offense.

No doubt possession of stolen property, in this case Trinidad's cell phone, is only circumstantial evidence that Mitchell committed the Trinidad robbery, but corroboration of accomplice testimony may be "'established entirely by circumstantial evidence.'"  (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1128.)  The question whether the circumstance that defendant possessed Trinidad's phone supported the inference that he committed the robbery was for the jury to decide.  For the purpose of permitting an inference of guilt of a theft-related offense from the possession of stolen property, corroborating circumstances may include the attributes of possession, including time, place, or manner and his or her sale of the stolen property at a discount price shortly after the theft-related offense occurred.  (*See People v. Hernandez* (1995) 34 Cal.App.4th 73, 80-81; *People v. Russo* (1959) 168 Cal.App.2d 747, 750 [stolen property sold in the middle of the night for a price

14

that suggested "'hot' merchandise"].)  The jury clearly rejected the defense argument that Mitchell might have innocently acquired the phone from the Puerto Rican man who first answered when Gaaolegos called her stepfather's phone.  The jury was free instead to draw the inference that he participated in the robbery itself based upon other factors, including the fact that he possessed the phone so soon after the robbery and was anxious to sell it on the street in the very early hours of the morning for a very low price.[11] Therefore, the evidence that Mitchell possessed Trinidad's cell phone within a few hours of the robbery, and then tried to sell it at a low price, was sufficient corroboration of Gipson's testimony to allow the jury, if it determined her testimony to be credible, to rely upon it in finding Mitchell guilty of the Trinidad robbery.

In a related vein, Mitchell argues that the many discrepancies between Gipson's testimony and Trinidad's account of the robbery, internal inconsistencies, and the numerous factors undermining her credibility, including the fact that she was high on crack cocaine when she gave the initial statement to Detective Pucci, was subjected to harsh interrogation, and had a strong self-interest in obtaining the benefits of her plea, renders it impossible to assign credibility to any portion of her testimony. Without belaboring the details of each point, we agree that there were many compelling reasons to discredit Gipson, but none of them rendered her testimony inherently incredible.  Mitchell had a full and fair opportunity to present all of these reasons in arguments to the jury, and the question of her credibility was ultimately one for the jury, which it resolved against Mitchell.  As the reviewing court, having found there was sufficient evidence to support the jury's finding of corroboration of Gipson's accomplice testimony, we must defer to the jury's determination that her testimony was also credible.  (*See, e.g., People v. Medina* (1961) 198 Cal.App.2d 224, 229-230 [when jury was fully apprised of reasons to discredit witness, including inducements in form of leniency, but found witness credible, Court of Appeal will not redetermine credibility].)

**b. Bedolla Robbery**

The slightly more difficult question is whether there was sufficient corroboration of Gipson's testimony that Mitchell also participated in the robbery of Bedolla.  As we have explained, the evidence of possession of Trinidad's cell phone was physical evidence

---

[11]  Mitchell's defense counsel argued that the jury should conclude he innocently acquired the phone because it would have been stupid for Mitchell to try to sell the phone so soon after it was stolen, and to a member of the victim's family.  Yet, the jury could reasonably conclude instead that Mitchell used poor judgment either because drug use interfered with rational thought, or the need for money for more drugs overrode the otherwise rational thought that selling the phone under such circumstances risked getting caught for the robbery.

independent of the tainted source of uncorroborated accomplice testimony that tended to link Mitchell to the Trinidad robbery. There is also no question that, with respect to the Bedolla robbery, Tamika Darnes's statement that Walton told her "they"[12] were driving down the street when he saw Joy on the sidewalk fighting with a Mexican, that he jumped out of the car, hit the Mexican and knocked him out,[13] coupled with the evidence that Bedolla's wallet was found discarded nearby, constituted sufficient independent corroboration of Gipson's testimony concerning the Bedolla robbery, at least with respect to Walton. (*See, e.g., People v. Ray* (1962) 210 Cal.App.2d 697, 700 [defendant's own admissions are sufficient corroboration].) There was not, however, any additional physical evidence, or an admission that directly linked Mitchell to the Bedolla robbery. Mitchell correctly points out that the Attorney General's reliance upon evidence that Bedolla suffered severe head injuries, which was consistent with Gipson's statement that Walton stomped on Bedolla's head, is misplaced, because although that evidence corroborates Gipson's testimony regarding a circumstance of the Bedolla robbery, it does not tend to link Mitchell with its commission. (*See People v. Martinez* (1982) 132 Cal.App.3d 119, 132-133 [testimony regarding circumstances of commission of offense is insufficient corroboration].) The question, then, is whether there is any other evidence, direct or circumstantial, independent of Gipson's testimony regarding the Bedolla robbery, that tended to link Mitchell with commission of the second robbery.

Where accomplice testimony relates to multiple crimes, evidence of similarity of method, or evidence that the crimes were committed pursuant to a common plan or scheme, is circumstantial evidence that may constitute corroborative evidence linking defendant to the offenses. (*See, e.g., People v. Robinson* (1960) 184 Cal.App.2d 69, 77-78 ["The similarity of the commission of crimes is another circumstance of a corroborative nature"]; *People v. Blackwell* (1967) 257 Cal.App.2d 313, 320-321 ["similarity in the commission of crimes in a given locality is itself a circumstance tending to corroborate the testimony of an accomplice"].) Even without the aid of Gipson's testimony, there

---

[12] Darnes does not specify who "they" were.

[13] At trial, Darnes insisted that the conversation in which Walton made this admission to her occurred before April 17 when she was stabbed, in which case Walton's admission could not have related to the Bedolla robbery, which occurred on April 29. The jury could have discredited this portion of her testimony because she also testified that she had a rocky romantic relationship with Walton, and there was evidence that she was angry at him at the time she made the statement to Pucci, yet at trial she acknowledged she was a reluctant witness under subpoena, and had apparently reconciled with Walton. It was therefore a reasonable inference that her trial testimony regarding the date Walton made the admission was made in an effort to protect him.

was evidence that the two robberies were both committed in the same area within a few hours of each other.  In each case a lone Hispanic man was targeted in or near an alley, hit in the head, knocked unconscious, and had his wallet and cell phone stolen.  At a minimum the similarities between the two robberies and their proximity in time and locale were sufficient to suggest that these were not unrelated spontaneous acts, but rather were committed pursuant to a common plan or scheme.  (*See People v.. Ewoldt* (1994) 7 Cal.4th 380, 402 (*Ewoldt*).)  Mitchell also was found in possession of Trinidad's cell phone, which strongly linked him to the first robbery.  It was inferable, from the circumstance that the second robbery was committed pursuant to the same common plan or scheme, that Mitchell also participated in the second.  No doubt this circumstantial evidence might not, standing alone, support his conviction of the Bedolla robbery, but it tended to link him to the Bedolla robbery without aid or interpretation of Gipson's testimony, and therefore was sufficient to corroborate her testimony that he planned and participated in the Bedolla robbery, as well as the Trinidad robbery.[14]

Opinion at 7-16.

Although California law requires that accomplice testimony be independently

corroborated, in federal court "a conviction may be based on the uncorroborated testimony of an

accomplice." *United States v. Turner*, 528 F.2d 143, 161 (9th Cir. 1975).  *See also Caminetti v.*

*United States*, 242 U.S. 470, 495 (1917) ("there is no absolute rule of law preventing convictions

on the testimony of accomplices if juries believe them.").  California Penal Code § 1111, which

requires corroboration of accomplice testimony, is a "state law requirement" which is "not

---

[14]  The foregoing evidence by itself would be sufficient to permit the jury to find Gipson's testimony regarding Mitchell's participation in the Bedolla robbery was corroborated. It is also worth noting, however, that although normally "[a]n accomplice cannot . . . corroborate his [or her] own testimony," the reason for that rule is that the purported corroboration still comes form a tainted source, i.e., an uncorroborated accomplice.  (*See People v. Bowley* (1963) 59 Cal.2d 855, 859.)  Here, however, Gipson's testimony as to Mitchell's participation in the Trinidad robbery was corroborated by the evidence of his possession of the cell phone.  In these circumstances, it would not do violence to the rule requiring corroboration of accomplice testimony to rely on her corroborated testimony concerning the Trinidad robbery as a source of additional circumstantial evidence that linked Mitchell to the commission of the Bedolla robbery. Her testimony that shortly after the Trinidad robbery the same group formed a plan to commit a second robbery also linked Mitchell to the Bedolla robbery because it tended to show defendant acted in accordance with that plan.  (*See Bunyard, supra*, 45 Cal.3d at pp. 1206-1207 [in murder trial, evidence of prior act attempting to solicit murder of victim corroborated accomplice testimony that defendant hired him to kill the victim, because it was probative of intent, and plan or scheme to kill the victim].)

1    required by the Constitution or federal law." *Laboa v. Calderon*, 224 F.3d 972, 979 (9th Cir.

2    2000).  *See also  Harrington v. Nix*, 983 F.2d 872, 874 (8th Cir.1993) ("[S]tate laws requiring

3    corroboration do not implicate constitutional concerns that can be addressed on habeas review.").

4    Therefore, petitioner's claim that uncorroborated accomplice testimony was improperly used to

5    support his conviction is not cognizable in this federal habeas corpus proceeding.

6         Petitioner is only entitled to habeas corpus relief if the state court's alleged violation of

7    state law denied him his due process right to fundamental fairness.  *Laboa*, 224 F.3d at 979.  "A

8    State violates a criminal defendant's due process right to fundamental fairness if it arbitrarily

9    deprives the defendant of a state law entitlement."  *Id.* (citing *Hicks v. Oklahoma*, 447 U.S. 343,

10   346 (1980).  Here, the California Court of Appeal carefully reviewed the corroborating evidence

11   and found it linked petitioner to both robberies, in compliance with Cal. Penal Code § 1111.

12   There are no grounds upon which this court could conclude that petitioner was arbitrarily denied

13   a state law entitlement.

14        To the extent petitioner is arguing the evidence, as a whole, was insufficient to support

15   his conviction on the robbery charges, he is not entitled to relief.  There is sufficient evidence to

16   support a conviction if, "after viewing the evidence in the light most favorable to the

17   prosecution, any rational trier of fact could have found the essential elements of the crime

18   beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  "[T]he dispositive

19   question under *Jackson* is 'whether the record evidence could reasonably support a finding of

20   guilt beyond a reasonable doubt.'"  *Chein v. Shumsky*, 373 F.3d 978, 982 (9th Cir. 2004)

21   (quoting *Jackson*, 443 U.S. at 318).  A petitioner in a federal habeas corpus proceeding "faces a

22   heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction

23   on federal due process grounds."  *Juan H. v. Allen*, 408 F.3d 1262, 1274, 1275 & n.13 (9th Cir.

24   2005).  In order to grant the writ, the habeas court must find that the decision of the state court

25   reflected an objectively unreasonable application of *Jackson* and *Winship* to the facts of the case.

26   *Id.*

Viewing the evidence in the light most favorable to the verdict, there was sufficient evidence introduced at petitioner's trial to support the jury finding that petitioner committed both robberies.  Under federal law, uncorroborated accomplice testimony may support a conviction unless it is "incredible or insubstantial on its face."  *United States v. Necoechea*, 986 F.2d 1273, 1282 (9th Cir. 1993).  As explained by the California Court of Appeal, Gipson's testimony, although problematic in some respects, was not incredible or insubstantial on its face.  Her testimony, along with the other evidence of petitioner's guilt of both robberies and the inferences flowing therefrom, as described by the state appellate court, was sufficient to support the jury verdicts in this case.  The conclusion of the state court that sufficient evidence supported petitioner's convictions is not contrary or an unreasonable application of United States Supreme Court authority.  Accordingly, petitioner is not entitled to relief on his first two grounds for relief.

### 2. <u>Severance</u>

In his third ground for relief, petitioner raises the following claims:

> Because the identity of Mr. Mitchell as a perpetrator in the two robberies was an issue, did the court err in holding that "gross unfairness" did not result by joining the robbery counts and in finding support for the joinder based on: a "common scheme or plan" from shared similarities, the accomplice testimony supported an inference that Mr. Mitchell had "motive and intent" to commit the robberies to obtain cash for drugs, & that there was no spillover effect from the joinder?  Was trial counsel ineffective for failing to move to sever the two counts?

Pet. at 8.  On direct appeal, petitioner claimed that the trial court violated his right to due process when if failed, *sua sponte*, to sever the robbery counts against him.  He also argued that if this claim was forfeited on appeal by trial counsel's failure to move for severance, his counsel rendered ineffective assistance.  Answer, Ex. C at 40.  This court will construe petitioner's arguments in the instant petition as raising the same claims.

////

////

The California Court of Appeal concluded that petitioner waived his claim that the trial court violated his right to due process in failing, *sua sponte*, to sever the two robbery counts. However, the court concluded that counsel did not render ineffective assistance in failing to request severance because a severance motion would not have prevailed.  The court reasoned as follows:

> Mitchell does not dispute that it was proper to join both counts of robbery against him.  He nonetheless contends that the joinder in a single trial of both counts of robbery resulted in "gross unfairness" amounting to a denial of state and federal due process.  (*See People v. Mendoza* (2000) 24 Cal.4th 130, 162.)  He argues that the joint trial of these two counts resulted in prejudice to him because the evidence of the Trinidad robbery would not have been cross-admissible in a separate trial of the Bedolla robbery, and the joinder of two weak cases, coupled with the more egregious injuries in the Bedolla robbery, resulted in convictions based upon a "spillover effect," and inflamed emotions, rather than deliberate consideration of the separate evidence in support of each count.

> Mitchell, however, never moved to sever the two counts.[15]  It is well established that a "defendant's failure to request a severance waives the matter on appeal," and the trial court has no sua sponte duty to sever.  (*People v. Hawkins* (1995) 10 Cal.4th 920, 940 (*Hawkins*), *disapproved on other grounds* by *People v. Lasko* (2000) 23 Cal.4th 101, 110; *see also People v. Maury, supra*, 30 Cal.4th at pp. 392-393; *People v. Ramirez* (2006) 39 Cal.4th 398, 438-439.)

> Mitchell nevertheless contends that the failure to make a motion for severance deprived him of his Sixth Amendment right to effective assistance of counsel.  "To establish ineffective assistance, defendant bears the burden of showing, first, that counsel's performance was deficient, falling below an objective standard of reasonableness under prevailing professional norms.  Second, a defendant must establish that, absent counsel's error, it is reasonably probable that the verdict would have been more favorable to him."  (*Hawkins, supra*, 10 Cal.4th at p. 940, *see also Strickland v. Washington* (1984) 466 U.S. 668, 687-694; *People v. Ledesma* (1987) 43 Cal.3d 171, 216-218.)

*////*

---

[15]  Mitchell did file a motion to sever his trial from Walton's and Gipson's, on *Aranda-Bruton* grounds (*People v. Aranda* (1965) 63 Cal.2d 518; *Bruton v. United States* (1968) 391 U.S. 123), before Gipson negotiated a plea.  He did not, however, challenge the joinder of the two robbery counts against him, nor did he move for separate trials of these counts.

Trial counsel's performance is not deficient for failing to make a motion that is not meritorious or likely would be denied.  (*See People v. Jones* (1979) 96 Cal.App.3d 820, 826-827.)  Moreover, if "the trial court would not have abused its discretion by refusing to grant a motion to sever had such a motion been made," we cannot conclude "there was a reasonable probability that a motion for severance would have been granted.  Ipso facto, we cannot conclude there was a reasonable probability that counsel's request for severance would have resulted in a verdict more favorable to defendant."  (*Hawkins, supra*, 10 Cal.4th at p. 941, fn. omitted .)

"A ruling on a motion to sever is based on a weighing of the probative value of any cross-admissible evidence against the prejudicial effect of evidence the jury would not otherwise hear, but in the weighing process the beneficial results of joinder are added to the probative value side."  (*People v. Bean* (1988) 46 Cal.3d 919, 936.)  Although the determination depends on the facts of each case, factors that may support a finding of prejudice include: "(1) evidence on the crimes to be jointly tried would not be cross-admissible in separate trials; (2) certain of the charges are unusually likely to inflame the jury against the defendant; (3) a 'weak' case has been joined with a 'strong' case, or with another 'weak' case, so that the 'spillover' effect of aggregate evidence on several charges might well alter the outcome of some or all of the charges; and (4) any one of the charges carries the death penalty or joinder of them turns the matter into a capital case."  (*People v.. Sandoval* (1992) 4 Cal.4th 155, 172-173.)

Ordinarily, cross-admissibility of evidence dispels any inference of prejudice.  (*People v. Arias* (1996) 13 Cal.4th 92, 126.)  The two robberies were both committed in the same area within a few hours of each other.  In each case a lone Hispanic man was targeted and accosted by a woman in or near an alley, hit in the head, knocked unconscious, and had his wallet and cell phone stolen.  We need not resolve the question whether the two robberies shared sufficient distinctive common marks to be cross-admissible on the issue of identity because, at a minimum, the similarities between the methods and participants in the two robberies and their proximity in time and locale were sufficient to suggest that they were committed pursuant to a common plan or scheme.  (*Ewoldt, supra*, 7 Cal.4th at p. 402; *People v. Prince* (2007) 40 Cal.4th 1179, 1271.)  The evidence of the two robberies was also cross-admissible to prove motive and intent.  (Evid.Code, § 1101, subd. (b).)  Gipson testified that on the night of the robberies, she, Mitchell, Walton, Joy and Diamond were smoking crack together and that after the Trinidad robbery they planned to rob another person.  This testimony supported an inference that Mitchell had a motive to commit both robberies, i.e., to obtain cash or property he could sell for drugs, and was also relevant to show the intent to steal underlying the physical attack on Trinidad and Bedolla.  (*See Bunyard, supra*, 45 Cal.3d at pp. 1206-1207 [in murder trial,

21

evidence of prior act attempting to solicit murder of victim corroborated accomplice testimony that defendant hired him to kill the victim because it was probative of intent, and plan or scheme to kill the victim].)

Moreover, even if the evidence in support of the two robberies was not cross-admissible, the evidence in the two robberies was not so weak or inflammatory that a joint trial would, or actually did, result in conviction based upon a "spillover effect" and inflamed emotions rather than consideration of the separate evidence in support of each count.  Although the primary evidence in both cases was the testimony of Gipson, an accomplice, her testimony was corroborated by the evidence we have already summarized. Although Bedolla did suffer more severe injuries, both victims were hit in the head and knocked unconscious, and the level of violence in the Bedolla case is not so extraordinary that it would be unusually likely to inflame the jury.  (*Cf. Coleman v. Superior Court* (1981) 116 Cal.App.3d 129, 138-139 [holding it was an abuse of discretion not to sever highly inflammatory counts of sex offense committed against children from count of murder of an adult].)

For all the forgoing reasons, we conclude that a motion to sever would likely not have been granted, and therefore counsel's failure to make the motion was not incompetent, nor did the failure to make a motion to sever result in any prejudice to Mitchell.

Opinion at 16-19.

Respondent argues that the decision of the California Court of Appeal that petitioner waived his severance claim constitutes a procedural bar which precludes this court from addressing the merits of that claim in the instant petition.  Answer at 13-14.  He also argues that petitioner has failed to demonstrate cause for his default because his trial counsel did not render ineffective assistance in failing to move for severance.

The United States Supreme Court has held that, when a state law default prevents the state court from reaching the merits of a federal claim, considerations of comity and concerns for the orderly administration of justice require a federal court to forego the exercise of its habeas corpus power unless the habeas petitioner can demonstrate both cause for failing to meet the state procedural requirement and actual prejudice.  *See Francis v. Henderson*, 425 U.S. 536, 539-42 (1976); *Wainwright v. Sikes*, 433 U.S. 72, 87 (1977); *Ylst v. Nunnemaker*, 501 U.S. 797, 800-

22

01  (1991).  However, a reviewing court need not invariably resolve the question of procedural

default prior to ruling on the merits of a claim.  *Lambrix v. Singletary*, 520 U.S. 518, 524-25

(1997); *see also Busby v. Dretke*, 359 F.3d 708, 720 (5th Cir. 2004).  Under the circumstances

presented here, this court finds that petitioner's claims can be resolved more easily by addressing

them on the merits.  Accordingly, this court will assume that petitioner's claims are not defaulted

and will address them on the merits.

Petitioner first claims that joinder of the two counts of robbery in one trial rendered the

proceedings fundamentally unfair, in violation of his right to due process.  As the Supreme Court

has explained, "[i]mproper joinder does not, in itself, violate the Constitution."  *United States v.

Lane*, 474 U.S. 438, 446 n.8 (1986).  Rather, habeas relief on a claim of improper joinder is

appropriate only where the "simultaneous trial of more than one offense . . . actually render[ed]

petitioner's state trial fundamentally unfair and hence, violative of due process."  *Sandoval v.

Calderon*, 241 F.3d 765, 771-72 (9th Cir. 2000) (quoting *Featherstone v. Estelle*, 948 F.2d 1497,

1503 (9th Cir. 1991)).  *See also Lane*, 474 U.S. at 446, n.8 ("misjoinder would rise to the level of

a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth

Amendment right to a fair trial"); *Davis v. Woodford*, 384 F.3d 628, 638-39 (9th Cir. 2004); *Park

v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000).  "[I]t is well settled that defendants are not

entitled to severance merely because they may have a better chance of acquittal in separate

trials."  *Collins v. Runnels*, 603 F.3d 1127, 1132 (9th Cir. 2010).

Petitioner has failed to demonstrate that joinder of the two robbery counts against him

rendered his trial fundamentally unfair.  As explained by the California Court of Appeal, the

evidence with regard to both robberies was cross-admissible to prove motive and intent and was

sufficient to suggest that both robberies were committed pursuant to a common plan or scheme,

neither of the robbery charges was unusually likely to inflame the jury against petitioner, and

neither case was particularly "weak" or "strong."  (Opinion at 18-19.)  Further, any possible

prejudice was limited through appropriate jury instructions.  *See Lane*, 474 U.S. at 450 n.13

23

(concluding, in a case regarding misjoinder of defendants, that a "carefully crafted limiting instruction" may reduce prejudice "to the minimum" and that"[w]e cannot necessarily assume that the jury misunderstood or disobeyed such instructions" (internal citations and quotation marks omitted)).  Petitioner's jury was instructed that they should consider each count separately (Reporter's Transcript on Appeal, at 378); that they "may not convict a defendant of any crime unless [they] are convinced that each fact essential to the conclusion that the defendant is guilty of that crime has been proven beyond a reasonable doubt" (*id.* at 389); that "each of the counts charged in this case is a separate crime" (*id.* at 393); and that "you must consider each count separately and return a separate verdict for each one."  *Id.*   Under these circumstances, the trial court did not violate petitioner's right to due process in failing to sever the charges against him lacks merit and that claim for habeas relief is denied.

This court also agrees with the conclusion of the California Court of Appeal that petitioner's trial counsel did not render ineffective assistance in failing to move for severance.

To support a claim of ineffective assistance of counsel, a petitioner must first show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness.  *See Strickland*, 466 U.S. at  687-88.  Second, a petitioner must establish that he was prejudiced by counsel's deficient performance.  *Id.* at 693-94.  Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id*. at 694.  An attorney's failure to make a meritless objection or motion does not constitute ineffective assistance of counsel.  *Jones v. Smith*, 231 F.3d 1227, 1239 n.8 (9th Cir. 2000) (citing *Boag v. Raines*, 769 F.2d 1341, 1344 (9th Cir. 1985)).  *See also Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996) ("the failure to take a futile action can never be deficient performance").  "To show prejudice under *Strickland* resulting from the failure to file a motion, a defendant must show that (1) had his counsel filed the motion, it is reasonable that the trial court would have granted it as meritorious, and (2) had the motion been granted, it is reasonable that there would have been an outcome more favorable to him."

*Wilson v. Henry*, 185 F.3d 986, 990 (9th Cir. 1999) (citing *Kimmelman*, 477 U.S. at 373-74).

The California Court of Appeal concluded that there was no basis for a successful severance motion under state law.  This conclusion is reasonable under the circumstances of this case and, as a ruling based on state law, is not subject to challenge in this federal habeas corpus petition. *See Estelle*, 502 U.S. at 67-68; *Park*, 202 F.3d at 1149.  Since a motion to sever the robbery counts would not have been successful, trial counsel was not ineffective in failing to raise such a motion.  Accordingly, petitioner is not entitled to relief on his claim of ineffective assistance of counsel.

**III. Conclusion**

For all of the foregoing reasons, IT IS HEREBY ORDERED that:

1. Petitioner's application for a writ of habeas corpus is denied.

2. The Clerk is directed to close the case.

3. The court declines to issue a certificate of appealability.

DATED:   December 8, 2011.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE